IN THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI

CHERYL HENDERSON,
ON BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES OF CHADRION
HENDERSON, DECEASED      **PLAINTIFFS**

**FILED**
JAN 2 3 2023
CAROLYN R. HAMILTON
BY _____ D.C.

v.      Civil Action No.: 2023 - 0022

VITALCORE HEALTH STRATEGIES, LLC;
SANDRA J. COX, LPN; KIMERA
BOYKINS, MHP; SANDY F. ADAMS, PSY. D.;
ANTONIO CASTILLO, M.D., TYLER
WILLIAMS, CPhT; and JOHN AND JANE
DOES 1-20, employees, staff, agents of
Mississippi Department of Corrections, and/or
VitalCore Health, LLC, respectively,
and XYZ CORPORATIONS      **DEFENDANTS**

USDC No. 4:23CV43-DMB-JMV

## COMPLAINT

    Twenty-seven-year-old Chardarion Henderson was found dead in his cell at the Mississippi State Penitentiary on August 1, 2021. Cheryl Henderson, on behalf of his wrongful death beneficiaries, ("Plaintiffs"), files this Complaint for damages against Defendants VitalCore Health Strategies, LLC; Sandra J. Cox, LPN; Kimera Boykins, MHP; Sandy F. Adams, Psy.D.; Antonio del Castillo, M.D.; Tyler Williams, CPhT; John and Jane Does 1-20, in their individual and official capacities; and XYZ Corporations. Plaintiffs seek relief under state law and demand a jury trial on all issues.

    The certificate of consultation is attached as Exhibit 1 to this Complaint in compliance with Mississippi Code § 11-1-58.

## OVERVIEW

    At the time of Chedarion Henderson's incarceration, the Mississippi State Penitentiary

("MSP" or "Parchman") was considered the worst prison in the United States of America. Infamous for torturous conditions, including a lack of basic resources like food, water, security, and healthcare. Parchman descended into a pit of anarchy, brutality, chaos, and death in January 2020. Two years later, on April 20, 2022, following an investigation of conditions at Parchman surrounding the riots, the Civil Rights Division of the United States Department of Justice ("DOJ") issued, *inter alia*, two findings relevant here which were explicitly cited as constitutional violations:

- **MDOC failed to meet the serious mental health needs of persons incarcerated at Parchman.** MDOC's flawed intake screening and poor mental health assessments fail to identify incarcerated persons in need of mental health care. Parchman has too few qualified mental health staff to meet the mental health care needs of persons confined at Parchman, which results in serious harm.

- **MDOC failed to take adequate suicide prevention measures.** MDOC fails to identify individuals at risk of suicide and houses them—often unsupervised—in dangerous areas that are not suicide resistant. MDOC does not adequately train Parchman officers to identify the signs and symptoms of suicidal behavior. Parchman staff do not respond to self-harm emergencies in a timely or reasonable manner. Twelve individuals incarcerated at Parchman committed suicide in the last three years.

*See* United States Department of Justice Civil Rights Division Report re: Investigation of the Mississippi State Penitentiary, April 20, 2022.[1]

---

[1] https://www.justice.gov/opa/press-release/file/1495796/download

It was in this tempest that Plaintiffs' decedent, Chadarion Henderson, was ultimately thrown. And, while being incarcerated at Parchman meant having to endure certain cruelties and indignities – both large and small, for Chadarion Henderson it also meant certain death. Mr. Henderson finally succumbed to Defendants' failures and died on August 1, 2021.

## JURISDICTION AND VENUE

1.      All acts complained of herein occurred in the State of Mississippi.

2.      This Court has original jurisdiction as this is an action arising under Mississippi Code Annotated §§ 15-1-36 and 11-7-13, common law contract principles, and Article 3, § 28 of the Constitution of the State of Mississippi.

3.      This Court has personal jurisdiction—general and specific—over Defendants. First, Defendants are individuals who reside in and/or entities who conduct much business in, maintain their principal place of business in, and/or have continuous and systematic contacts with the State of Mississippi. Second, Defendants committed a tort in the State of Mississippi.

4.      This Court has subject matter jurisdiction over the claims asserted by Plaintiffs herein as a substantial portion of the events giving rise to such claims occurred in Sunflower County, Mississippi.

5.      Venue is proper in this Court because a substantial portion of the events giving rise to Plaintiffs' claims occurred in Sunflower County, Mississippi.

## PARTIES

6.      Plaintiff Cheryl Henderson is the mother and wrongful-death beneficiary of Chadarion Henderson ("Chadarion"). Ms. Henderson brings this case on behalf of the wrongful-death beneficiaries of Chadarion. Ms. Henderson is an adult resident citizen of Pearl, Mississippi.

7.     Defendant VitalCore Health Strategies, LLC ("VitalCore") is a limited liability company in good standing with and doing business in the State of Mississippi, and also, particularly for purposes here, an independent contractor of the Mississippi Department of Corrections ("MDOC"). At all times relevant and material hereto, VitalCore contracted with MDOC to provide comprehensive onsite healthcare services (i.e., medical, dental and mental health) to inmates in MDOC custody at correctional facilities including but not limited to the Central Mississippi Correctional Facility ("CMCF") and Parchman. As an independent contractor, VitalCore fulfilled the constitutional and statutory responsibilities of MDOC by providing medical, dental, and mental health care to inmates in MDOC custody beginning on or about October 5, 2020 through the present (i.e., date of filing). *See* Agreement between the State of Mississippi Department of Corrections and VitalCore Health Strategies, LLC for Onsite Inmate Health Care, including but not limited to Contract #8400002377 ("VitalCore Contract").[2] Plaintiffs may serve VitalCore with process through its Registered Agent, C.T. Corporation System, 645 Lakeland Drive, Suite 101, Flowood, Mississippi 39232.

8.     At all times material and relevant hereto, VitalCore acted through its owners, officers, directors, employees, agents, or apparent agents, including, but not limited to, administrators, management, nurses, doctors, technicians, and other staff, and is responsible for their acts or omissions pursuant to the doctrines of *respondeat superior*, agency or apparent agency.

9.     Upon information and belief, Defendant Sandra J. Cox, LPN, was an employee of VitalCore, who was responsible for providing medical care to Chadarion while in MDOC custody on behalf of VitalCore, personally treated Chadarion, or both, while Chadarion was

---

[2] Transparency Mississippi,
https://boe.magic.ms.gov/BOE/OpenDocument/2110082229/OpenDocument/opendoc/openDocument.fac
es?logonSuccessful=true&shareId=2.

housed within the custody and care of MDOC. Plaintiffs may serve this Defendant with process under Mississippi Rule of Civil Procedure 4.

10.     Upon information and belief, Defendant Kimera Boykins, MHP, was an employee of VitalCore, who was responsible for providing medical care to Chadarion while in MDOC custody on behalf of VitalCore, personally treated Chadarion, or both, while Chadarion was housed within the custody and care of MDOC. Plaintiffs may serve this Defendant with process under Mississippi Rule of Civil Procedure 4.

11.     Upon information and belief, Defendant Sandy F. Adams, Psy.D., was an employee of VitalCore, who was responsible for providing medical care to Chadarion while in MDOC custody on behalf of VitalCore, personally treated Chadarion, or both, while Chadarion was housed within the custody and care of MDOC. Plaintiffs may serve this Defendant with process under Mississippi Rule of Civil Procedure 4.

12.     Upon information and belief, Defendant Antonio Del Castillo, M.D., was an employee of VitalCore, who was responsible for providing medical care to Chadarion while in MDOC custody on behalf of VitalCore, personally treated Chadarion, or both, while Chadarion was housed within the custody and care of MDOC. Plaintiffs may serve this Defendant with process under Mississippi Rule of Civil Procedure 4.

13.     Upon information and belief, Defendant Tyler Williams, CPhT, was an employee of VitalCore, who was responsible for providing medical care to Chadarion while in MDOC custody on behalf of VitalCore, personally treated Chadarion, or both, while Chadarion was housed within the custody and care of MDOC. Plaintiffs may serve this Defendant with process under Mississippi Rule of Civil Procedure 4.

14.     Defendants John and Jane Does 1-20 are unidentified employees of Defendants,

including any parent entity thereof, and/or MDOC. First, they are those employees of MDOC who, under color of state law, deprived the decedent, Chadarion, of his Eighth Amendment rights under the U.S. Constitution imputed to the State under the Fourteenth Amendment or committed acts with such malice and recklessness as to constitute intentional torts against Chadarion. Second, they are those employees of Defendants not identified in medical records who provided Chadarion with negligent treatment or care. Plaintiffs have not yet learned the identities of John and Jane Does 1-20 and will amend this Complaint to include these parties once their identities can be determined.

15.     Defendants XYZ Corporations are unidentified entities who, were responsible for providing medical care to Chadarion while in MDOC custody. Second, they are entities not identified in medical records who provided Chadarion with negligent treatment. Plaintiffs have not learned the identities of XYZ Corporations and will amend this Complaint to include these parties once their identities can be determined.

## FACTS

1.     At the time of his death, Chadarion was housed at the Mississippi State Penitentiary in Parchman, Mississippi ("MSP" or "Parchman"). During his incarceration, Chadarion was also housed at Central Mississippi Correctional Facility ("CMCF"), located in Pearl, Mississippi.

2.     Defendant VitalCore is an independent contractor of MDOC licensed to do business in the State of Mississippi. As an independent contractor, VitalCore is charged with fulfillment of the constitutional and statutory responsibilities of MDOC by providing medical, dental, and mental health care to inmates in MDOC care and custody from approximately October 5, 2020 through the present.

3.      VitalCore is bound by the VitalCore Contract to provide health care services consistent with applicable American Correctional Association (ACA) and National Commission on Correctional Health Care (NCCHC) standards.

4.      The ACA and NCCHC establish mandatory minimum standards for correctional healthcare. Failure to maintain accreditation suggests failure to establish and maintain minimum standards in correctional healthcare.

5.      MDOC policy mandates that each inmate be medically screened upon arrival into custody before being housed.

6.      Chadarion was brought into MDOC custody first on or around October 30, 2020. Upon entry into MDOC custody, Chadarion was initially screened and housed at CMCF.

7.      Chadarion's intake screening was conducted by Sandra S. Cox, LPN, after which he was assigned to the general prison population by Defendants on October 30, 2020. At this time, Chadarion's mental health history and current mental state should have been thoroughly evaluated; but Defendants and their employees neglected to properly assess or examine Chadarion's mental health—either initially or at any other time during his incarceration—and rather, failed to render adequate mental care or treatment.

8.      After being housed at CMCF, Chadarion was transferred to Parchman where he began making alarming complaints regarding the housing situation, including that he was in fear for his life.

9.      Due to these complaints, Chadarion's family began to place multiple calls to MDOC regarding his treatment and inquiries on how to get him moved to a different housing location.

10.     Despite Chadarion's complaints and those of his family, his MDOC records are

devoid of action to address these concerns for his health and safety by MDOC, and his medical records are deficient of continuous and meaningful mental health care during this extremely distressing time.

11.     On August 1, 2021, Chadarion was pronounced dead in his cell. The Office of the Medical Investigator listed the manner of death as suicide.

12.     Defendants were charged with Chadarion's medical and mental healthcare while housed at CMCF and Parchman, yet they failed him resulting in his untimely death on August 1, 2021.

13.     Chadarion experienced pain and suffering and ultimately died as a result of the Defendants' breach of duties and failure to provide Chadarion adequate treatment and care while housed at CMCF and Parchman.

14.     Defendants failed to adequately examine, test, diagnose, treat, and care for Chadarion while he was in their care.  He died of a cause that was completely preventable had adequate medical care been provided.

15.     Untreated medical problems, mental illness, feelings of hopelessness, lack of agency, and powerlessness—as documented in Chadarion's medical records—increase the risk of suicide.

16.     Despite requests for assistance and care, Chadarion's risk of suicide increased throughout the duration of his incarceration, yet reasonable measures and meaningful care was not offered by Defendants.

17.     Given Chadarion's medical history which included mental health issues, substance abuse problems, and sickle cell disease (chronicled, *albeit* sparsely, during his incarceration), VitalCore knew or should have known of his increased risk for suicide, and

should have trained its agents and employees to care for such patients and to make appropriate recommendations, treatment plans, housing plans and referrals.

18.     Moreover, given the history of suicide committed by Parchman inmates, Defendants should have known or knew and should have trained its agents and employees to recognize and intervene in light of the suicidal risk factors displayed by Chadarion.

### DEFENDANTS HAVE FAILED TO PROVIDE ADEQUATE MEDICAL CARE

1.     Defendants have exhibited a policy and practice of failing to provide inmates with adequate health care and are deliberately indifferent to the fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm.

2.     Defendants have failed to provide adequate care in approving medications, equipment, and treatment for those who are in their custody. Their practice of ignoring and/or refusing to address mental health concerns and "sick calls," delaying outside appointments and follow-up examinations have resulted in worsening health conditions, further injury/sickness, and even deaths of MDOC inmates.

3.     The State of Mississippi pays tens of millions of dollars to VitalCore for the provision of medical and mental health care to MDOC facilities. But, the result is questionable, at best.

4.     Like those similarly situated, Chadarion, was routinely denied medical and mental health care at the hands of a bureaucratic system that was inaccessible and riddled with incompetence.

### FAILURE TO PROVIDE ADEQUATE HEALTHCARE STAFF

5.     Defendants consistently fail to provide an adequate number of healthcare staff at MDOC facilities and they do so knowingly.

6. MDOC facilities suffer from dangerously deficient staffing shortages, incompetency, and corruption among employees that threaten the safety of those in MDOC care and custody–this is especially true for those inmates that have a chronic illness or disability, whether physical or mental.

7. Inmates such as Chadarion, are often without necessary medications as Defendants' staff nurses will not bring the medications ("pill call") to the units if there is not a guard present. Instead of attempting to find a guard to escort them or establish regular pill call times to ensure the security they need is present, pill call is simply skipped–sometimes for days and weeks.

8. The VitalCore contract addresses the number of medical staff to be placed at each MDOC facility. To date, the medical staff of each facility remains grossly inadequate, not meeting the required contractual terms as outlined by the most recent contract signed between MDOC and Defendant VitalCore.

9. Defendants have caused significant delay in diagnosis or identification of serious medical concerns and illnesses, causing unnecessary pain, suffering, disability, and even death.

10. Inmates such as Chadarion have made numerous requests for medical treatment which were met with denial or refusal for lengthy periods of time.

11. Often, when requests for care are finally acknowledged, inmates are transported to receive medical care but are never examined. They are left to sit in waiting and then shipped back to their cells without seeing a healthcare provider.

12. If an examination does occur which results in a diagnosis of any kind, inmates are rarely, if ever, given any follow-up care.

13. Moreover, inmates are also routinely denied necessary medications used to

manage such maladies as high blood pressure, diabetes, and other disability-related illnesses.

14.     Rather, through Defendants' blatant disregard of their medical needs, inmates such as Chadarion are allowed to medically deteriorate, occasionally—as with Chadarion—resulting in death.

### *FAILURE TO PROVIDE SERIOUS/EMERGENT MEDICAL CARE*

15.     Defendants consistently failed to provide medical care to inmates such as Chadarion with serious medical needs as emergent medical care is non-existent in these facilities.

16.     The insufficiency and/or lack of serious/emergent medical care attributed to worsening conditions/symptoms/injury, pain, loss of functions, and/or death of MDOC inmates including, but not limited to, Chadarion.

17.     There have been several instances in MDOC facilities where inmates such as Chadarion have been provided very minimal medical treatment of their illnesses.

18.     More concerning, inmates such as Chadarion have reported that correctional officers were given the authority to deny or delay access to medical care – whether by individual officer's affirmative actions or the systemic understaffing of custodial staff who are necessary to inmates' access to treatment.

19.     Correctional officers who are positioned on the residential units and manage the day-to-day activities of inmates such as Chardarion in MDOC custody were not adequately trained on how to handle health care emergencies. As a result, Chadarion and similarly situated inmates were forced to suffer otherwise avoidable harm and injuries, including unnecessary death, as correctional staff often make critical initial decisions about the medical care needed.

### *DEFENDANTS FAILED TO PROVIDE BASIC MENTAL HEALTH CARE*

20.     Mississippi is the most institutionalized state in the country and consistently fails

its people when it comes to treating and caring for those Mississippians with mental illness. MDOC is no exception.

21. Defendants' mental health care system is severely understaffed and lacks adequate personnel with sufficient expertise to properly treat the individuals within its care.

22. Defendants have failed to identify, treat and medicate individuals such as Chadarion with mental illness and/or suicide risk. Additionally, these systematic failures rise to the level of causing significant injuries and the unnecessary and wanton infliction of pain.

23. Defendants have long been aware that the staffing of mental health professionals is inadequate and the lack of intensive, thorough mental health treatment is absent.

24. Defendants have routinely failed to ensure adequate staffing, both as to gross numbers of mental health professionals, and as to quality and experience, of key mental health professionals.

25. This is in direct contradiction of the contractual terms that are listed clearly in the most recent contract between MDOC and VitalCore.

26. Each facility, per the contract executed in October of 2020 has a specific number of medical care professionals that must be employed at each facility. Not one facility under the control of MDOC has the adequate number of medical staff, including mental health providers.

27. Defendants have wholly failed to conduct a thorough assessment of inmates including but not limited to Chadarion, for mental health conditions upon admission resulting in inmates with acute mental illness being ignored and denied the appropriate care and medication that they require.

28. Defendants are offering no mental health therapy. Both individual and group therapies have been suspended throughout all MDOC facilities.

*DENIAL OF NECESSARY MEDICATIONS TO MANAGE MENTAL ILLNESS*

29.     Defendants are routinely and systematically failing to prescribe, provide and manage necessary psychiatric medications.

30.     Inmates are denied an opportunity and access to basic medications used to manage mental illnesses, such as depression, substance abuse disorder, bipolar disorder, schizophrenia, and other related conditions.

31.     Without medication, inmates such as Chadarion are left to deal with their mental health issues on their own, which can trigger behavioral problems, aggression, and self-harm.

32.     In this regard, Defendants have created a tragic circle of events where they deny individuals with mental health concerns any type of treatment and/or medication and then punish them when they are left to deal with the side effects and repercussions of their illnesses on their own.

33.     As previously alleged, Defendants by the terms of the VitalCore Contract assumed the duties of MDOC to provide care and treatment in accordance with relevant standards for the purposes of providing medical and mental health care to inmates, including Chadarion.

34.     Nonetheless, on or about August 1, 2021, Chadarion, while in the custody and care of MDOC perished from a complete lack of adequate medical care that should have been provided by MDOC, VitalCore, and its individual providers working under contract at Parchman and CMCF. Defendants did not adequately diagnose, examine, treat, or care for Chadarion. These failures led to his untimely death at age 27.

35.     Through their policies and practices described herein, Defendants subjected Chadarion, to a substantial risk of serious harm and injury from inadequate mental health care

and treatment.

36.   Defendants have been and are aware of all the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

37.   The collective behavior of Defendants in conspiracy together led to inadequate suicide prevention and treatment for inmates such as Chadarion at suicide risk.

38.   The collective behavior of Defendants in conspiracy together led to the routine denial of basic/minimal healthcare for inmates such as Chadarion.

39.   The collective behavior of Defendants in conspiracy together led to the routine denial of basic mental healthcare for inmates such as Chadarion at suicide risk.

40.   The collective behavior of Defendants in conspiracy together led to a failure to provide basic suicide prevention and treatment, which has led to multiple inmate suicides, including that of Chadarion.

## INCORPORATION

41.   Each section under any heading or no heading, is incorporated into every other section so that this Complaint is to be read as a whole. All factual allegations apply to all claims to the fullest extent possible.

## RESPONDEAT SUPERIOR AND AGENCY

42.   Plaintiffs incorporate all preceding paragraphs by reference here fully.

43.   Whenever Plaintiffs allege herein that Defendants did or did not do a particular act or omission, Plaintiffs mean that Defendants, acting individually, and/or by and through their agents, officers, directors, servants, and employees, either acted or failed to act in the particular manner(s) detailed/described, in the course and scope of his/her employment, agency, or contract with Defendants, and to advance Defendants' business.  Thus, under the doctrine of respondeat

superior, Defendants are vicariously liable for the acts and omissions of its agents, officers, directors, servants, and employees in the course and scope of their employment, further outlined elsewhere in this petition and incorporated by reference here fully.

## CAUSES OF ACTION

### COUNT ONE–NEGLIGENCE/GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

44.     Plaintiffs incorporate all preceding paragraphs fully herein by reference.

45.     MDOC independently contracted with Defendants, and their employees/agents to provide medical, dental, and mental health treatment in accordance with ACA and NCCHC standards to Parchman inmates, including but not limited to Chadarion.

46.     At all times relevant and material hereto, Defendants owed a duty to provide medical and mental health care and treatment in adherence with ACA and NCCHC standards, at minimum, for inmates housed in MDOC custody including Chadarion per Defendants' contractual obligations as specified in the VitalCore Contract.   Defendants further owed Chadarion a duty to to act prudently, safely and within the bounds of the law, including a duty to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, acting in the same or similar circumstances, to avoid causing unreasonable risk of harm to their patients, including Chadarion. Defendants further owed a duty to conform to the accepted standard of care when directing treatment, administering treatment, and/or supervising the medical care provided to Chadarion.

47.     As further described herein, Defendant breached the duties of care owed because they failed to conform to the minimally accepted standards of medical care established by the ACA and NCCHC during the treatment of Chadarion, failed to act as reasonable health care

providers would under the circumstances, and through their policies and practices described herein, subjected inmates including Chadarion to a substantial risk of serious harm and injury from inadequate medical care.

48.     Gross negligence is the willful, wanton failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.[3]

49.     For the period complained of herein, Defendants, their employees, agents, apparent agents, and/or contractors, who were at all relevant times acting within the course and scope of their employment, agency, apparent agency, and/or contract, were negligent and/or grossly negligent in the care and services provided to Chadarion while he was an inmate and patient.

50.     Defendants' negligent, willful and/or grossly negligent acts included, but were not limited to:

    a.     Failing to provide adequate staff, adequately paid staff, and/or adequately trained staff at CMCF and Parchman to care for inmates such as Chadarion, with the full knowledge that such inadequate staffing practices would place inmates such as Chadarion at risk for injuries;

    b.     Negligent hiring, retention, and supervision of staff including but not limited to health care workers at CMCF and Parchman with the full knowledge that such negligent staffing practices would place inmates such as Chadarion at risk for injuries;

    c.     Failing to provide proper suicide prevention planning, suicide prevention monitoring, suicide prevention policies and procedures; suicide prevention equipment,

---

[3] *See Doe v. Salvation Army*, 835 So. 2d 76, 77 (Miss. 2003)

and suicide prevention training, so that Chadarion was allowed to complete suicide without proper monitoring, prevention, and treatment;

        d.      Failing to provide and implement proper care plans that would adequately meet Chadarion's healthcare needs, including his risk for suicide;

        e.      Allowing Chadarion to remain unattended and unmonitored despite an acute, known risk of suicide;

        f.      Failing to provide a safe environment;

        g.      Failing to ensure that Chadarion received adequate supervision and assistance devices to prevent suicide;

        h.      Failing to have adequate and effective policies, procedures, staff, and equipment to adequately supervise Chadarion;

        i.      Failing to provide services to attain or maintain the highest practicable physical, mental, and psycho-social well-being of Chadarion in accordance with a written plan of care; and,

        j.      Failing to adequately monitor Chadarion.

     51.     All acts complained of herein were authorized, participated in, or ratified by Defendants, their administrators, managers, officers, directors, and/or shareholders.

     52.     Said acts and omissions on the part of Defendants, their employees and/or agents constitute negligence, willful and/or gross negligence, and were so wanton as to show a disregard for the health and safety of others, specifically Chadarion, thus giving rise to an award of punitive damages against Defendants.

     53.     As a direct and proximate result of Defendants' tortious acts and/or omissions, Chadarion suffered immense pain and sustained fatal injuries on August 1, 2021. Defendants

and their individual employees knew or should have known of Chadarion's mental health issues and increased suicide risk, but failed to monitor his condition, provide him with the appropriate medication and/or treatment, and neglected to take Chadarion's requests for mental health care seriously. These acts and omissions fall grossly short of the standard of care for medical providers and contractors.

54.     As a direct and proximate result of Defendants negligence, tortious conduct and wrongdoing that resulted in Chadarion's death, Plaintiffs have been deprived of love, care, affection, companionship, support, financial support and other benefits and pleasures of the family relationship.

55.     Furthermore, as a direct and proximate result of Defendants' negligence, tortious conduct and wrongdoing that resulted in Decedent's death, Plaintiffs have incurred funeral and other related expenses, among other damages.

### COUNT TWO–FAILURE TO PREVENT SUICIDE

56.     Defendants are liable for failing to prevent Chadarion's suicide. For the reasons explained below, Defendants are liable for their deliberate indifference under the Eighth Amendment, through vicarious liability under state law, and for their direct negligence under state law.

57.     Defendants disregarded a substantial risk of serious harm to Chadarion by failing to place him on suicide watch, and by keeping him off of suicide watch until his death.

58.     Defendants knew, as reflected in Chadarion's medical records, that he had threatened and attempted suicide in the recent past and was at substantial risk of self-harm. Defendants further knew, or should have known, that Chadarion had disclosed an intent to self-harm and/or commit suicide. Plaintiffs incorporate all preceding paragraphs fully herein by

reference.

59. Nonetheless, Defendants failed to place Chadarion under observation of any sort, including non-acute suicide observation, justifying such actions by dismissing Chadarion's please for assistance and/or other such actions as motivated by behavior and substance abuse and not mental health issues.

60. As a result, Chadarion was transferred between multiple housing units at Parchman and given access to a bedsheet.

61. Had Chadarion been closely and properly observed on suicide watch, he would not have had the opportunity to carry out his suicide plan.

62. Similarly, had Chadarion been deprived of access to a bedsheet, he would not have had the opportunity to carry out his suicide plan.

63. Therefore, Defendants violated the Eighth Amendment through their deliberate indifference to a serious medical need under the Eighth Amendment and 42 U.S.C. § 1983.

64. For the same reasons, Defendants failed to uphold the duty of reasonable care under state law—specifically by breaching standards of care for medical and mental health treatment and care in correctional facilities. In doing so, Defendants caused Chadarion's untimely passing. VitalCore is vicariously liable for the negligence of its agents and/or employees because it was the exclusive operator/provider of medical and mental health care of inmates housed in the MDOC facilities at the time, and, thus, had a nondelegable duty to make sure inmates such as Chadarion were given appropriate medical care.

65. Although Defendants knew or should have known about Chadarions's behavior and risk of suicide, they disregarded this excessive risk of serious harm by allowing him access to a bedsheet which Chadarion could and did use to carry out his suicide plan.

66. Upon information and belief, the custom or practice at Parchman—attributable to Defendants including VitalCore—is to conserve financial resources by utilizing acute and non-acute suicide observation only in the most extreme cases and, then, only for limited and often inadequate periods. This custom or practice was a moving force behind Defendants' failure to place Chadarion on suicide observation in violation of the 8th Amendment. This custom or practice, likewise, represents a direct breach of the duty of reasonable care by VitalCore.

67. It is, further, the policy, custom, or practice at Parchman—attributable to Defendants including VitalCore—to allow prisoners access to materials commonly used for self-harm, such as bedsheets, even when the prisoners have disclosed a plan for self-harm. Rather than restricting prisoners' access to materials on an individualized basis based on their specific medical needs, prisoners are given access to items that are generally available to other prisoners in their housing unit. This policy, custom, or practice was a moving force behind Defendants' failure to place Chadarion on suicide observation and instead provide him access to a bedsheet, in violation of the 8th Amendment. This policy, custom, or practice, likewise, represents a direct breach of the duty of reasonable care by VitalCore.

68. As a direct and proximate result of Defendants' tortious acts and/or omissions, Chadarion suffered immense pain and sustained fatal injuries on August 1, 2021.

## COUNT THREE-- MEDICAL NEGLIGENCE AGAINST ALL DEFENDANTS

69. Defendants were contracted to provide medical, dental, and mental health treatment to individuals incarcerated at CMCF and Parchman.

70. For the reasons described herein, Defendants and their individual employees committed negligence in their services and treatment, or lack thereof, of Chadarion. They thus breached their duties to provide Chadarion with minimally adequate medical treatment, as well

as the duties of good faith and fair dealing.

71.     Defendants and their individual employees failed to conform to the required standards of care in treating Chadarion, and their breach of the duties owed to Chadarion while knowing of his medical condition and acute risk of suicide, proximately caused or contributed to his injuries and death.

72.     Said acts and omissions on the part of Defendants and their employees constitute negligence and gross negligence and a willful, callous, wanton and reckless disregard for the health and safety of Chadarion. These acts and omissions proximately caused Chadarion's injuries and wrongful death. Defendants and their individual employees knew or should have known of Chadarion's serious medical and mental health conditions, but they failed to monitor him in accordance with relevant standards or provide him with appropriate medication or treatment and neglected to follow up with Chadarion on his requests for mental healthcare. These acts and omissions fall grossly short of the standard of care for medical providers and contractors.

73.     As such, Defendants breached the duties owed to Chadarion which constitutes medical negligence.

74.     Defendants knowingly allowed, aided, and abetted in VitalCore's failure and breach of duties—all of which proximately caused or contributed to Chadarion's injuries and death.

## COUNT FOUR–NEGLIGENT OPERATION OF A MEDICAL FACILITY AGAINST ALL DEFENDANTS

75.     Plaintiffs incorporate all preceding paragraphs fully herein by reference

76.     Defendants had authority over the medical clinics at CMCF and Parchman per the terms of their contract with MDOC. VitalCore had sole authority, control, and responsibility over

the execution, implementation, and enforcement of the terms of their contract with MDOC.

77. Defendants allowed numerous breaches and violations of their contract that led to the injuries and death of Plaintiffs' decedent, Chadarion Henderson. Defendants lacked sufficient expertise to assess, treat and manage Mr. Henderson's conditions; they were negligent and grossly negligent in failing to properly do same.

78. Defendant VitalCore is bound by the VitalCore Contract to provide medical and mental health care treatment and services that conform, at minimum, with applicable ACA and NCCHC standards.

79. Defendants failed to abide by numerous ACA and NCCHC minimum mandatory standards, including but not limited to:

      a.    Continuity of care during facility transfers;

      b.    Providing written treatment plans by a mental health practitioner;

      c.    A mental health program that includes at a minimum: crisis intervention and management of acute psychiatric episodes; stabilization of the mentally ill and the prevention of psychiatric deterioration in the correctional setting; provision for referral and admission to licensed mental health facilities for inmates whose psychiatric needs exceed the treatment capability of the facility;

      d.    Mental health examinations that include but are not limited to: assessment of suicidal potential and person-specific circumstances that increase suicide potential; review of history of psychotropic medication; review of history of psychotherapy; referral to treatment, as indicated; development and implementation of a treatment plan;

      e.    A written suicide prevention plan that is approved by the health authority and reviewed by the facility or program administrator. The plan includes staff and

offender critical incident debriefing that covers the management of suicidal incidents, suicide watch, assaults, prolonged threats, and death of an offender or staff member. It ensures a review of critical incidents by administration, security, and health services. All staff with responsibility for offender supervision are trained on an annual basis in the implementation of the program. Training should include but is not limited to: identifying the warning signs and symptoms of impending suicidal behavior; understanding the demographic and cultural parameters of suicidal behavior, including incidence and variance in precipitating factors; responding to suicidal and depressed inmates; communication between correctional and health care personnel; referral procedures; housing observation and suicide watch level procedures; and follow-up monitoring of inmates who make a suicide attempt.

80.     As such, Defendants breached their duties to Plaintiffs which constitute negligence in the operation of a medical facility and a willful, wanton, and grossly negligent disregard for Chadarion's life, safety and well-being.

81.     Defendants' wrongful and tortious conduct, including but not limited to allowing, aiding and abetting in VitalCore's failure and breach of duties—all of which proximately caused or contributed to Chadarion's injuries and ultimately his death.

## COUNT FIVE–NEGLIGENT HIRING, TRAINING, AND SUPERVISING AS TO DEFENDANT VITALCORE

82.     Plaintiffs incorporate all preceding paragraphs fully herein by reference.

83.     VitalCore had the duties to properly screen, supervise, educate, and train its employees regarding proper treatment of inmates with chronic illness/disease, psychiatric illness, mood disorders, and at chronic risk for suicide.

84.     VitalCore is bound by the VitalCore Contract to provide services consistent with

applicable ACA and NCCHC standards.

85. The ACA and NCCHC set mandatory minimum standards for training of both medical personnel and non-medical personnel in the provision of medical services in a prison.

86. VitalCore has violated numerous ACA and NCCHC minimum mandatory standards related to hiring, training and supervision.

87. VitalCore breached its duty to properly screen, supervise, educate, and train their employees and as a result thereof proximately caused or contributed to the injuries suffered by Chadarion and ultimately his death.

## COUNT SIX–INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

88. Plaintiffs incorporate all preceding paragraphs fully herein by reference.

89. Defendants intentionally denied Chadarion proper and necessary mental health care as required by the VitalCore Contract.

90. Defendants' intentional acts include, but are not limited to:

a. Failure to evaluate, treat and manage Chadarion's health including his risk of suicide;

b. Failure to develop, employ, and follow appropriate policies and procedures with regard to the assessment, treatment, and management of Chadarion's severe health conditions and suicide risk;

c. Failure to create an appropriate treatment plan;

d. Failure to implement an appropriate treatment plan;

e. Failure to take the reasonable steps to acquire proper treatment of Chadarion;

f. Failure to refer Chadarion to appropriate specialists;

g. Failure to timely transfer Chadarion to an appropriate psychiatric facility or

behavioral health facility;

       h. Failure to protect and preserve the health of Chadarion; and

       i. Failure to implement any suicide prevention whatsoever, despite Chadarion

clear risk of suicide.

91.     The conduct of Defendants was extreme, outrageous and intentional.

92.     Both Plaintiffs and their decedent, Chadarion, have suffered severe emotional distress as a result of the conduct of Defendants, and which particularly as to Chadarion created an irresistible impulse in him to complete suicide.

93.     As a result of the foregoing, Plaintiffs are entitled to damages, including punitive damages, for the severe psychological and emotional distress, pain, suffering and wrongful death of Chadarion, as well as for the mental and emotional distress suffered by them as a proximate result thereof.

### COUNT SEVEN–WRONGFUL DEATH AGAINST ALL DEFENDANTS

94.     Plaintiffs incorporate all preceding paragraphs fully herein by reference.

95.     Defendants, and their employees, administrators, agents, servants, representatives, officers, directors, designees, physicians, counselors, nurses, nurse's aides, and/or contractors, who were acting within the scope of their employment, agency, apparent agency or contract, were wrongfully, intentionally, and/or negligently deficient in the care and services they provided to Chadarion.

96.     MDOC independently contracted with VitalCore to provide medical, dental, and mental health treatment to Parchman inmates including Chadarion. VitalCore owed duties to Chadarion and breached same.

97.     Defendants and their employees and/or agents had a duty to conform to the

standards of care to protect Chadarion against unreasonable risk of injury, including death, but breached its duty by failing to conform to the required standards of care in treating Chadarion.

98.     As a direct and proximate result of said wrongful actions, Chadarion died.

99.     If the death of Chadarion had not occurred, Chadarion would have been entitled to maintain an action and recover damages in respect of the wrongful actions of Defendants.

100.    As a direct and proximate result of the wrongful actions of Defendants as described above, Plaintiffs have lost the consort, society, companionship, affection, income services, and support of Chadarion, and have suffered mental anguish and emotional distress because of the injury and death of Chadarion.

101.    The wrongful actions of Defendants as described above, proximately caused or contributed to the death of Chadarion, whose personal representatives are entitled to recover monetary damages from Defendants.

### COUNT EIGHT–MISCELLANEOUS CAUSES OF ACTION AS TO ALL DEFENDANTS

102.    All allegations are incorporated fully herein by reference.

103.    Each of the causes of action below proximately caused damages, illness, injuries, and ultimately, the untimely death of Chadarion. As a result, Plaintiffs are entitled to all damages flowing therefrom.

104.    Negligent Infliction of Emotional Distress - Defendants negligently caused Plaintiffs and their decedent, Chadarion, to suffer emotional distress as a result of their extreme, outrageous, and indifferent conduct.

105.    Fraud and Misrepresentation - Defendants committed fraud by misrepresenting the truth and making it appear in official records that Chadarion was receiving care and treatment when, in fact, he was receiving very little or none.

106.   Civil Conspiracy - Defendants and their employees entered into a civil conspiracy to accomplish an unlawful purpose or a lawful purpose unlawfully. Namely, Defendants and their employees conspired to suppress the truth and make it appear in official records that Chadarion was receiving care and treatment when, in fact, he was receiving little to none.

## DAMAGES

107.   Plaintiffs incorporate all preceding paragraphs fully herein by reference. Because of the above actions and/or omissions of Defendants, Plaintiffs and their decedent, Chadarion Henderson, have suffered many damages, including, but not limited to, the following: (a) pain and suffering, (b) mental anguish, (c) emotional distress, (d) loss of companionship, (e) breach of contract, (f) funeral costs; (g) attorneys' fees, and (h) punitive damages.

## PRAYER FOR RELIEF

For all these reasons, Plaintiffs pray for the following relief, jointly and severally against Defendants for compensatory and punitive damages within the jurisdictional limits of this Court, attorneys' fees and costs, interest from the date of judicial demand until paid; and other such general and equitable damages and relief as appears reasonable in the premises.


Date: January 23, 2023

Respectfully submitted,

/s/ Marcy B. Croft
Marcy B. Croft (MS Bar # 10864)
MJ LEGAL, P.A.
1501 Jacksonian Plaza 12159
Jackson, Mississippi 39236
Telephone: (601) 510-5247
Fax: (601) 385-1945

**COUNSEL FOR PLAINTIFFS**